ESTATE OF SUCKOW: GREENEBAUM SONS BANK & TRUST COMPANY, Appellant, vs. SUCKOW and another, Administrators, Respondents.

*January 11—February 8, 1927.*

*Blue Sky Law: Permit to sell stock: Not required in out-of-state transactions: Principal and agent: Ratification of unauthorized act of agent: Bills and notes: For payment of corporate stock: Consideration: Burden of proof.*

1. The evidence in this case is *held* not to support a finding of the court that a bank cashier, receiving a check and note for stock in a corporation and mailing them to the president thereof in another state, with a request to forward the stock to the maker of the note, was the agent of the corporation so as to make it a Wisconsin transaction. p. 128.

2. To establish agency by the conduct of an alleged agent such conduct must be brought home to the principal and be either acquiesced in or ratified by him. p. 128.

3. The sale of the corporate stock was a transaction consummated in the foreign state, and hence not in violation of secs. 1753—50 and 1753—51, Stats. 1919, for want of a permit to sell the stock in Wisconsin. p. 129.

4. Testimony of the bank cashier that he spoke to the president several times as to why the stock was not sent to the maker of the note was not evidence that the latter never received the

stock and hence that the note given for the purchase price thereof was without consideration.  p. 129.

5. A note which is non-negotiable, but which recites that it was for value received, imports a consideration, and the burden of proving a failure of consideration is on the party alleging it. p. 129.

6. Evidence that deceased claimed he never received any stock for which he gave his note, on which the claim against his estate was based, is incompetent as hearsay.  p. 129.

7. The doctrine that a subscription to stock in a corporation constitutes a sufficient consideration for a note or promise to pay therefor is inapplicable where the maker of the note was not in fact a subscriber, but a purchaser of stock from the president of the corporation.  p. 130.

APPEAL from a judgment of the county court of Washington county: J. E. USELDING, Acting Judge.  *Reversed.*

For the appellant there was a brief by *Robinson & Saltzstein,* attorneys, and *Aaron Scheinfeld,* of counsel, all of Milwaukee, and oral argument by *Mr. Scheinfeld.*

*John O'Meara* of Milwaukee, for the respondents.

OWEN, J.  This is an appeal from the judgment of the county court of Washington county disallowing a claim of *Greenebaum Sons Bank & Trust Company* against the estate of Herman W. Suckow.  The claim was based upon a promissory note executed by Herman W. Suckow November 1, 1920, to the American Axle Company for $4,000, which note had been transferred by the said American Axle Company to the said *Greenebaum Sons Bank & Trust Company.* The note was non-negotiable.  The allowance of the claim was contested upon two grounds: first, a lack of consideration, and second, that the transaction resulting in the execution of the note was void.

It appears that the deceased was a stockholder and director in the Barton Axle Company of Barton, Wisconsin.  That company had entered into a contract for the sale of its product to the American Axle Company.  Some of the officers of the Barton Axle Company discovered that the American

Axle Company was likely to make fine profits out of its contract with the Barton Axle Company, and concluded that it would be a good investment to acquire some stock in the American Axle Company.

On November 1, 1921, one P. C. Wolf was cashier of the Barton State Bank. He was a stockholder and director of the Barton Axle Company and a business associate of the deceased. That day the deceased went to Wolf and said he wanted to procure stock to the amount of $5,000 in the American Axle Company. He executed his check for $1,000, executed the note upon which the claim under consideration was founded, and delivered them to Wolf. Wolf gave the deceased a receipt reading as follows: "Received of H. W. Suckow five thousand dollars in payment of same amount of stock in American Axle Company. (Signed) P. C. Wolf." Wolf mailed the check and the note to McAvoy, president of the American Axle Company, with the request that they forward stock in the American Axle Company, to the amount of $5,000, to the deceased.

The court found, and it is undisputed, that on November 1, 1920, the said American Axle Company had not secured from the railroad commission of Wisconsin a permit authorizing it to sell its stock in the state of Wisconsin, as required by secs. 1753—50 and 1753—51, Stats., commonly known as the Blue Sky Law. The court, therefore, held that the transaction constituted a violation of this law and that the note was void.

Whether the transaction was void depends upon whether it was a Wisconsin transaction. In order to constitute it a Wisconsin transaction it must appear that Wolf was the agent of the American Axle Company. This fact was also found by the court. However, we discover no evidence in the record to support this finding. P. C. Wolf was called as a witness by the administrator and he testified positively that on November 1, 1920, he was not the agent for the American Axle Company and had no authority to dispose

of its stock in the state of Wisconsin. He further testified positively that he was acting for the deceased in the transaction. The only other evidence in the record upon which respondent relies to support the finding of the court that Wolf was acting as the agent of the American Axle Company is the testimony of a brother of the deceased to the effect that a few days subsequent to November 1, 1920, Wolf solicited him to buy some stock of the American Axle Company. He does not testify that Wolf represented himself to be the agent of the American Axle Company or that he declared himself to be such agent. His testimony simply is that Wolf not only urged him to buy some of the stock in the American Axle Company but used coercive measures to that end. It appears that some time later Wolf became the fiscal agent for the American Axle Company, and established an office in Chicago for the purpose of selling its stock. It also appears that on December 10, 1920, a permit was issued to the American Axle Company to dispose of a limited amount of its stock in Wisconsin, and that a permit to dispose of a further amount of its stock was granted on December 20, 1920.

Respondent recognizes the well-established rule that agency cannot be established by the declarations of the agent himself, but contends that every act of Wolf indicates that he was acting as agent of the Axle Company on said date in his transactions with Suckow. He then calls attention to the fact that what is referred to as the agreement between Suckow and Wolf covers many details. For instance, Wolf testified that the deceased was to receive five thousand dollars' worth of preferred stock, and with each share of preferred stock he was to receive two and one-half shares of the common stock. The deceased was to give a check for $1,000 and a note of $4,000 to the American Axle Company. The time of payment of the note, the place of payment of the note, and the rate of interest were all agreed upon, for the note was then and there drafted by Wolf and signed by

Suckow. It was therefore definitely settled between Wolf and Suckow what stock he was to receive, when he was to pay for it, and the terms of the note. It is also plain that this contention is borne out by Wolf's testimony to the effect that "I mailed the note and check to McAvoy, president of the American Axle Company, with instructions to forward stock to Mr. Suckow." Such, in brief, are the contentions of appellant's counsel.

We see nothing in these considerations inconsistent with the fact that Wolf was acting as the agent of Suckow, and the evidence is entirely lacking in anything that indicates that anything done by Wolf was binding upon the American Axle Company. It is quite plain that there had been some understanding between McAvoy, president of the American Axle Company, and those interested in the Barton Axle Company that they could procure stock in the American Axle Company upon certain terms and conditions. There is nothing in the circumstances set forth inconsistent with the conclusion that the deceased, having determined to invest $5,000 in the stock of the American Axle Company, went to the cashier of his bank, his business associate, and asked him to send his check and note aggregating $5,000 to the American Axle Company, or to Mr. McAvoy as president, with the request that he send him five thousand dollars' worth of stock according to a pre-understanding or arrangement. There is nothing in the testimony of the brother of the deceased, heretofore referred to, to indicate that Wolf had authority to represent or power to bind the American Axle Company in any particular. In order to establish agency by the conduct of the alleged agent, most fundamental principles require that his conduct be brought home to the principal and that the principal either acquiesce in or ratify such conduct. The record discloses no evidence of this character, and we must hold that the finding that Wolf was the agent of the American Axle Company in the trans-

action is without any support in the evidence. We must hold that Wolf was the agent of the deceased and that the transaction was consummated in Chicago and not at Barton; from which it follows that the finding of the court that the transaction was in violation of the so-called Blue Sky Law of this state cannot be sustained.

The court further found that the note was given without any consideration. Hearsay evidence was received by the court tending to show that the deceased claimed that he never received any stock from the American Axle Company. This, however, was struck out by the court, and the only evidence left in the record upon which such a finding can be sustained is the testimony of Wolf, "I think I spoke to McAvoy several times why it [the stock] was not sent to Mr. Suckow." This testimony of course assumes that the stock was not sent to Mr. Suckow, but it does not constitute evidence of that fact. There is no evidence in the record that McAvoy ever admitted his failure to send the stock, nor is there any other evidence to establish the fact than that just quoted.

The note reciting it was for value received, itself imports a consideration. The burden of proving a failure of consideration is upon the estate. The estate has not only failed to meet that burden, but has brought no competent evidence to establish the fact.

While a perusal of the record leaves the impression that there is great doubt as to whether the stock was ever in fact delivered to the deceased, the evidence which creates that impression was clearly incompetent. However, it would seem that competent evidence to establish that fact, if it be a fact, may be procured. No reason appears why the testimony of Mr. McAvoy may not be procured, or why the books of the corporation may not be examined to ascertain whether the deceased ever became a stockholder in the company. While the judgment must be reversed, we think the

interest of justice requires that the estate have a further opportunity to prove, if it can, the fact that the stock was never delivered, resulting in a failure of consideration for the note.

The appellant calls our attention to cases holding that a subscription to stock in a corporation constitutes a sufficient consideration for a note or a promise to pay for the stock. The evidence here, however, does not disclose that the deceased subscribed for stock in the American Axle Company. His proposition was to buy stock, and his proposal was made to Mr. McAvoy, the president of the company. The transaction, as we understand it, did not place him in the relation of a stockholder in the company so that he could compel the issuance of the stock to him by virtue of that relation. Under the circumstances, the doctrine which appellant seeks to invoke does not apply.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial on the question of the delivery of the stock.